The next case will be 05-1532, Benmol Corporation v. the Secretary of the Treasury. I would like to start out with just a brief summary of what I think the fatal error that the board made, and I refer to it as the board's 20% definition of material handling. The contract itself set what I call the 100% definition, which was evaluate, select, procure, and stock materials and supplies. To me, that's the 100% definition. What the board saw material handling as, simply picking up the phone, ordering supplies. So if you start out with a very narrow definition of what material handling is, and companies come in to you and say, it took 20.1 hours to do this little part, of course that's an unreasonable argument. But that's because the board so nearly defined what they thought procurement. They looked at procurement as our obligation, material handling under the contract, as being ordering five chemicals. No, it was evaluating some materials, selecting them, procuring certainly, stocking them, but also supplies. And I can give the court a reference. So you're here and you're asking us to do what? To reverse the board and tell the board they were wrong because they misdefined material handling? And to go back and use the court, use the contract's definition of material handling. The board's starting out with a definition that's not supported by substantial evidence. The contract itself defines it. The board ignores that definition, truncates the definition, and then wonders, why does it take 20 hours for purchase order, for picking up the phone and ordering stuff? The board's starting point was wrong. And when you start out with that kind of an understanding of what material handling is, of course it's unreasonable to have 20 hours per order. And we're saying, no, no, it's much broader than that, that the board didn't really consider what the contract required for material handling. They took the very small part of it, and it's much broader than that. But even assuming that, the board also concluded, did it not, that your accounting practices didn't satisfy accounting standards. So do you think that – and let's assume – are you challenging that finding as well? Yes, we would have to, because they don't – one of the reasons they didn't believe this process was because of the numbers. They looked at how our argument was based on our records and said, well, that can't be possible. Your records must be wrong. No, our records were good. We had good records. It was the problem that the board so narrowly interpreted what our job was under that contract.  No, I never picked – we argued it to this court, but no, that's the problem. The issue was never, as our brief indicates, the issue was never the validity of these DCAA annually audited timesheets. The issue was that what was in the timesheets is not elsewhere in what we're billing. We're not double billing. That was the issue. The validity, the underlying validity of those timesheets was never an issue. But you're arguing here the definition of material handling. Did you argue that in your brief, or are you just arguing substantial evidence? No, sir. Well, I'm not sure which cubbyhole that goes into. Tell us where in your brief you were arguing the proper definition. In my brief, we talked about – You know, you often get attorneys doing last-minute preparation and getting a good idea for an argument that wasn't in the briefs. Oh, no, it's in here, Your Honor. It's one of those situations where you don't look at a case for three months. You come back and you look at it and you say, wait a minute, here's a concept that underlies what I believe is a basic error of the board. Yeah, but that's the point. It's got to be in the brief. It is, Your Honor. My definitions – Well, I think I see something on page 31. It's in the summary of argument, second paragraph. There's no – And I went on and described – That's where you challenged the narrow definition of material handling, right? And it's on page 38 as well, Your Honor, of my basic brief. But it seems to me that – I'm sorry. And the same would hold true as I read the board's decision. They didn't believe the tagged timesheet argument because the ultimate conclusion was a total of 20.1 hours per purchase order. Well, that's true in that sense. But if you look at material handling the way the contract defines it, to include supplies as well – and by the way, supplies – I'm sorry, spare parts in one instance was about a third. On Joint Appendix 802, we show that for the December 2001 invoice, materials were 125,000 for that month. Spare parts were 65,000, half of it. And yet the board says these, at its definition, is that these activities, which my client, the President, was arguing were material handling, have little, if anything, to do with ordering and paying for the five specified chemicals. That's how the board defines procurement under this and material handling under this. So we say it's much, much broader than that. What was the board – I mean, in the prior case, you had been disallowed any cost for material handling, correct? I'm sorry. I'm sorry. You had an earlier case where you were disallowed any amount of money for material handling, right? This is the first case, Your Honor. Okay. All right. The underlying – there was a motion for summary judgment where the Bureau of Graving and Printing said that it wasn't responsible for anything. No, that's what I'm referring to. Yes. And the board said there that it is responsible for material handling. Yes. Did it define in that context, then, when they were determining what liability existed, was there any discussion or argument with respect to the confines? No, Your Honor. I don't believe that. The issue never came up. It was a battle of accountants. And that's why we feel to some extent blindsided by the board coming and looking and challenging the underlying documentation. The government never challenged it. It was never an issue. It was never an issue at the hearing of the board, too, and I'm sure I know Chief Judge Daniels reads the material. I mean, that issue was there, and none of us picked it up. The government was arguing that you were entitled to these costs, right? So there was an issue as to the appropriateness of the costs, if you will. I'm sorry. Wasn't there a dispute between whether or not you were entitled to all of this money? Oh, yes, but solely because it was – the government said we'd only got paid for it, and our issue was to prove, no, we haven't been paid for these yet. The issue was double-counting below, that in this timesheet that showed tagged hours, for example, the government was saying you got paid for it already. As part of the fixed price items, we were saying, no, it's different. These tagged hours were never compensated. We've never been paid for that time. And so when the board, as I read it, has two primary arguments on these tagged timesheets, it doesn't think that when you start out with a very high number for Ms. Wu, which they didn't believe, and then you add an additional five or six hours per order, well, yes, as I said before, the very narrow definition of procurement leads to that conclusion. And in that instance, the board was reasonable, but we're saying what was the definition here is much broader. The same would hold true for the board's second point, where the board clearly says that they don't believe that material handling was projecting the condition of pipes and equipment. Of course that's material handling. It's not picking up the phone and ordering five chemicals, which was the board's definition. But it's clearly material handling. In fact, FAR defines procure much broader. I think my brief cited a FAR definition of it. So it's much broader than the very narrow definition that the board used. And that definition is not supported by substantial evidence. But the contract clearly defines the contract section at joint appendix 321 has a much broader definition. I'd like to reserve. You mean it's far broader? I'm sorry, Your Honor? It's far broader. Skip. My wife tells me I have trouble hearing. She might be right. Mr. Peace. May it please the court. The decision of the General Services Board of Contract Appeals should be affirmed because the decision is supported by substantial evidence. Your Honor, the evidence that Benmal and the government presented in this case demonstrates that as a whole, Benmal's accounting system cannot be relied upon to show any proper allocation of costs, to show that the costs were allocated in fact to either the time and materials line item or to the fixed price item. Well, does the government agree with what Mr. O'Connor is saying, that the issue here really comes down to how you define material handling costs? I mean, that's the problem. I don't think he would disagree if he agreed with the narrow definition that these costs wouldn't be appropriate. So it comes down to the definition of how widely you construe material handling costs. Is that the government on all fours on that being the issue? Absolutely not, Your Honor. Okay. In fact, the evidence produced here, and it's important to consider that what the board is looking at is whether there's duplication, whether these costs were properly allocated to a fixed price line item or to a time and materials line item, which at the time of performance, although Benmal has produced testimony that in fact knew all along that this was a time and materials line item, nobody else involved knew this. And so, for instance, in regarding the prior DCAA audits, there's no reason to believe that the DCAA auditors would have looked into that particular aspect of these costs being for the time and materials line item because there was no concept for the government or for the DCAA that there was such a line item. This was only determined years afterwards when Benmal made that claim. I'm sorry to get you back around to the initial point. The definition of materials and materials handling for this purpose is not directly relevant here. And the reason is that Benmal had the opportunity to present evidence to show that its costs were in fact properly allocable to materials handling. The only evidence that Benmal produced was in large part Ms. Wu's testimony that described what materials handling consists of. And she described the processing of invoicing and ordering these chemicals and going to certain types of vendors to obtain this. In addition, although there was no evidence presented for the actual hearing at this determination the board made, it was only produced on reconsideration regarding the additional notations that were made on the timesheets as to acid tests and respirator tests and so on. And the description of those in Mr. Maliam's affidavit that was submitted only upon reconsideration, it was not before the board in its initial consideration, do not fit within the materials definition here. They talk about equipment that needed to be purchased and whether equipment might last a certain amount of time or not. It didn't discuss whether spare parts needed to be purchased, which admittedly the board discusses when it discusses materials that focuses on these five chemicals because those were the bulk of what was happening in this contract. And that was what the testimony was about. The only items before the board in terms of these other types of what are allegedly spare parts or what are being contended are spare parts were these obscure notations on the timesheets. So I'm having a hard time figuring out exactly what happened here. So are you saying that if you understand what Mr. O'Connor's argument is here before us, correct? Yes. Are you saying that he's wrong on the substance or are you just saying that, well, it's too bad because that issue really wasn't one that the board decided. And if they had a case to be made that material handling costs should be construed very, very broadly to include all of these, they should have made it to the board at the time. Your Honor, I think that I'm making two parts of that. The first thing is it wasn't—well, I guess it was to an extent before the board as to what consisted of time of materials handling. Benmal did have an opportunity to present that to the board and argue it to the board. It did so in a very limited way in the initial hearing, I think, and attempted later to supplement it in an affidavit. It was clear from what the board presented both at the end of its—at the direction at the end of its initial decision denying summary relief that Benmal would have to put forth evidence to show that these costs were in fact properly allocated to time of materials handling and were not allocated to the fixed price line items. In other words, that's a substantial evidence question. Yes, Your Honor. This is a substantial evidence question. The definition—the definition issue was wrapped up in the substantial evidence. In a sense, Your Honor, I guess I might put it another way. Even assuming that Benmal's interpretation of the spare parts and material handling is correct, that there may have been other things that might have been involved, even assuming that, based on the evidence they presented below, they didn't present that evidence to show that there was any sort of effort made upon that that would have been fit—that would have fit inside of that time of materials handling that wouldn't have otherwise been allocated to a fixed price line item. For instance, going back to—going back to Ms. Wu's time, where she testified as to what her time consisted of. And even if Benmal argues that her time—the types of tasks she was talking about weren't the only thing they did, looking at her time as to what, in fact, she did do, it spent her—it took her approximately 15 hours per invoice on average to perform these tasks. And the Board, in and of itself, looked at that evidence and said, it's just facially irrational. It just makes no sense that a supervisor of accounting, as a factual matter, could possibly have spent 15 hours to do each invoice on 500 invoices over a period of years. It's just simply—there's no rational basis for that. And so the Board made a factual finding as to that. And although Benmal argues it's not appealing to that, it apparently concedes that that was either irrational or it's not properly allocated or—I'm not sure exactly what it concedes, but it claims that that's not part of its argument. That's intertwined with the rest of the facts that the Board determined, which is, if it took her—allegedly took her 15 hours per invoice, then—and then other people admittedly helped, assisted her in doing some of these functions, then there were even more hours added on, as the Board found, and it simply was not rational. The Board found that that, as part of its determination as to what the accounting procedures could lend in terms of the actual evidence of these costs being allocated properly, was just not—it was just imprecise. It was beyond imprecise. The quote they gave was, after hearing and briefing, the contractor's presentation left us with the firm and unmistakable sense that Benmal's claim is exaggerated, inherently improbable, self-contradictory, and full of omissions, imprecision, and errors. So there's simply—the evidence that was presented, one, didn't show how these costs were properly allocated to time and materials. Two, it didn't show how these costs were not excluded from the fixed-price line items. And in those combinations—and three had just sort of inherent flaws in and of themselves—those all combined as a factual matter did not permit the Board to make any sort of award that wouldn't be speculative. And this court's case law requires that the Board not make speculative decisions as to quantum. And the Board did so, as a matter of fact. Any legal arguments that were interwoven in Pallant's brief as to whether materials were really chemicals or might have been spare parts really don't go to the heart of the matter, which is regardless of even assuming that it was what they thought it was. That the bulk of looking at the entire record, the record of Benmal's accounting practices, and looking at the DCAA auditor's testimony about this claim leads to the reasonable conclusion of the Board that, as a matter of fact, these costs could not be accounted for. Quickly, as to the timesheets, I don't believe there was a dispute below, and I don't think there's truly a dispute here, as to whether Benmal's employees in fact completed timesheets, wrote on those timesheets BEP 56 or BEP. The dispute is about where those costs properly are allocated. And it centers around, I guess, to some extent, Mr. Maliam's testimony as to whether that BEP 56 really meant that it's only in the materials line item, as opposed to it's just assigned to this contract as a whole, which could have been within the fixed price line item. And so that's really the confusion. It's not a matter of whether the timesheets in fact said BEP 56 or whether they in fact recorded hours properly for the employees. The question is allocation of that cost and whether it's allocated to the time materials or whether it's allocated to the fixed price line item. Finally, I guess two final points. The secretarial work, although admittedly, Your Honors, I apologize because there was an error in our brief. The State of Mrs. Ewell was the only secretary. There was, in fact, another secretary, Ms. Fairwald, and I apologize for that. However, the secretarial aspect of this case still holds. The fact is that in Benmal's proposal, it proposed 400 hours per secretary to work on the fixed price line item. And there's been no indication that that secretarial work was—well, first of all, let me say what the indication was. Mr. Mulliam testified that although he put it in there because he thought that someone might need it or he might need it, that in fact he either never needed it or if he did need it, it was assigned to overhead generally. And so two aspects of that. First, there were secretarial work being done and there wasn't an explanation or sufficient explanation for the Board to base a conclusion on as to what those secretaries were doing and how they specifically did not include the fixed price line item. Secondly, Mr. Mulliam's testimony itself and even the argument here in the reply brief stated that that secretary that was to be assigned to the fixed price line item, had there been some work and there admittedly may have been some, it would have been just allocated to overhead and apparently applied across all contracts. That would be clearly at odds with what the definition of that secretary should have been for a fixed price line item. And so that adds additional support to the fact that the accounting system just isn't sufficient here. In addition, the numerous other factual findings and legal conclusions that weren't challenged by Ben Mull also support the Board's decision. For these reasons, Your Honors, and the reasons stated in our brief, we respectfully request that the Court confirm the decision of the GSBC. Thank you. Mr. O'Connor. It's hard data, timesheets, because an estimate is off, is backwards. Estimates can be off. Estimates are estimates. The timesheets are there. It's black and white. So, to me, there's much more credibility. It's hard for me to stand up here and argue about 50-60% estimates because they're estimates. The data and the timesheets show what efforts were devoted to these individual tasks. And I would also take on that same line, perhaps the timesheet should have said BEP 56 and which of the, whether it was materials or spare parts. My client's theory was, well, look, either are reimbursable. Those tagged timesheets only deal with one or the other. How about the Board's conclusion that the timesheets are inherently improbable? They were audited by DCA. How could they possibly be? Well, they would be, yes, if you take their small, if I could go back to my opening point, that yes, that testing equipment and doing specifications and revising specs is inherently improbable as material handling, if material handling is picking up the phone and ordering five chemicals. But for the Board to challenge the DCAA that got vetted year after year after year, the credibility should, it's the Board that's got to establish its credibility to second-guess DCAA. How can a Board, the experts supposedly are the DCAA in that routine… …however many hours it worked. But wasn't the Board's point as to how, what those hours were devoted to? Yes, I guess you're right. So, I mean, they're two separate, I mean, somebody, DCAA who's auditing, is just auditing that people were working at this location on something for this many hours on this particular day. But the Board was getting, I don't understand how that's inconsistent with what the Board found, where the Board was charged with looking at what they actually did during the time they were charging. What seems to me, Your Honor, that if the DCAA was concerned that somebody was charging, mischarging costs, charging as direct costs, tagging costs that should have been in an indirect, I think DCAA would want to know about that. So it seems to me that when DCAA is looking at our indirect cost statement, they would have to look at what costs go into direct, what costs go into indirect. And the other issue with the Secretary, as our brief makes the point, Mr. Mulliam and Benmal were the incumbent contractors, so to make its bid look good, any bidder would put in the required number of hours for a Secretary at the site. And we said the Secretary would do that kind of site work, would be ordering uniforms and that kind of stuff. But he didn't need it. When he came down to administering the contract, he was the incumbent, all that stuff had been set up, so either he didn't charge it at all or he just, it was so minor he put it into overhead. That's a good business decision, perhaps, to do it that way. I don't think it invalidates his, there were a number of Secretaries, we're not arguing Secretary time. Thank you, Your Honor. All right, thank you very much. The case is submitted. All rise. The Honorable Court is adjourned until tomorrow morning at 10 a.m.